**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-0965-22

STATE OF NEW JERSEY,

     Plaintiff-Respondent,

v.

FARARHD H. GUNTER,
a/k/a SHAMILL ABDULLAH,
ANTWAN GUNTER,
FARARHD GUNTER,
FARAHD GUNTER,
FARHAD GUNTER,
FARRARHD GUNTER,
HAKIM GUNTER,
SAMAD GUNTER,
SAMMAD GUNTER,
FARHAD GUNTHRE,
FAROD JOHNSON,
FARROD JONES, and
JAMAR WILLIAMS,

     Defendant-Appellant.

_____

Submitted November 7, 2024 – Decided December 6, 2024

Before Judges Mawla, Natali, and Vinci.

On appeal from the Superior Court of New Jersey, Law Division, Hudson County, Indictment No. 14-02-0285.

Jennifer Nicole Sellitti, Public Defender, attorney for appellant (Monique Moyse, Designated Counsel, on the brief).

Esther Suarez, Hudson County Prosecutor, attorney for respondent (Stephanie Davis Elson, Assistant Prosecutor, on the brief).

PER CURIAM

Defendant Fararhd Gunter appeals from an August 29, 2022 order denying his petition for post-conviction relief (PCR) after a partial evidentiary hearing. We affirm.

I.

We previously discussed the underlying facts and procedural history of defendant's case when we affirmed both his convictions for first-degree aggravated manslaughter, N.J.S.A. 2C:11-4(a)(1);[1] first-degree felony murder, N.J.S.A. 2C:11-3(a)(3); first-degree armed robbery, N.J.S.A. 2C:15-1; second-degree unlawful possession of a handgun, N.J.S.A. 2C:39-5(b); second-degree possession of weapon for an unlawful purpose, N.J.S.A. 2C:39-4(a); second-degree armed robbery, N.J.S.A. 2C:15-1; second-degree aggravated assault,

---

[1] The jury found defendant not guilty of murder, the indicted charge, but guilty of the lesser-included offense of aggravated manslaughter.

A-0965-22

N.J.S.A. 2C:12-1(b)(1); and his sentence. State v. Gunter, No. A-0735-16 (App. Div. June 22, 2018). We detail only so much of the facts to place our decision in context and as necessary to address defendant's arguments.

Two incidents in Jersey City during the evening of May 17, 2013, form the basis for the charges—indicted and tried together—against defendant and codefendants Shawn Harris and Janice Everett. In the earlier incident, a twelve-year-old boy was shot and killed, and his father suffered a gunshot wound to his leg during a robbery. Later that evening, a victim was shot after he followed and yelled at two men who had just robbed him and another victim at gunpoint as the victims sat in a car.

Prior to trial, defendant filed a motion to dismiss the indictment based on the joinder of the charges or, in the alternative, sever them for trial. Counsel argued the indictment should be dismissed or, in the alternative, the charges severed because they involved "two separate incidents, [and] two separate shootings" and to join the charged offenses in a single trial would be prejudicial to defendant. After considering the parties' written submissions and oral arguments, Judge John A. Young, Jr., denied defendant's motion on June 15, 2015, and explained his decision in a comprehensive and detailed fifteen-page written decision.

A-0965-22

Everett, along with Harris, pled guilty prior to trial and agreed to testify against defendant. She explained prior to the robberies, Harris picked her up from her work. Later that afternoon, they met defendant, who she knew as "Slim[,]" and they drove to Jersey City. Harris told Everett they were "going to take a run[,]" which, she understood based on Harris' prior use of the phrase that they were going to "rob somebody."

Everett also testified she remained in the car while Harris and defendant committed the first robbery. When the two men reentered the car Harris said, "[t]his idiot back here [meaning the rear-seated defendant] did something stupid." Everett further testified when the men entered the vehicle, she noted Harris was "shaking and sweating and he looked angry." After Harris told Everett that defendant "did something stupid[,]" she "panicked and . . . asked what happened." Defendant then said, "I shot 'em." Everett stated she smelled gunpowder and turned toward defendant and saw a gun in his lap when defendant said, "[t]hey wouldn't give it up[,]" and that "he'll live."

Curtis Small testified he was with Gywan Levine, Sr., the victim shot in the first incident, when a man approached Levine and "pulled out a gun and started shooting." Small stated he was on Levine's front steps and when he saw the man pull out a gun, he ran into the house. While looking through a glass

4

window, Small testified he saw a single assailant shoot the twelve-year-old boy and then walk across the street and shoot Levine.

Small also testified the shooter was wearing a gray hoodie and blue jeans. Weeks after the shooting, Small went to the police station and a detective showed him six photographs in an interview room. Small testified he identified a photograph of defendant as the shooter. Small acknowledged on cross-examination he initially told police the shooter did not have facial hair, was bald, dark-skinned, and was not wearing glasses, contrary to defendant's appearance.

Nicole McCord also testified she was in the vicinity of the second shooting and identified defendant as one of the individuals involved. McCord stated, "I [saw] him approach the two guys and they [were] asking him for money. One of the guys said he didn't have any. Then the other guy said, I got [twenty dollars] and he shot him." McCord acknowledged she did not see who fired the gun but witnessed the two men go back to the car they got out of, and noted there was a female driver.

Several days after the shootings, McCord identified defendant from a photo array and testified she did not speak to the detectives before reviewing the photos. McCord acknowledged at the time of her testimony she was on

probation and enrolled in Recovery Court.  She also stated she did not receive a promise or deal from the prosecutor's office in exchange for her testimony.

Defendant testified in his own defense and maintained his innocence.  He testified that he did not see or shoot any of the victims; was never in the car involved in the shootings; and was not in a gang, unlike Harris.  He believed he was only named because the police needed a third suspect, which Harris provided them likely because he was angry with him due to the "possibility . . . one of [Harris'] kids could have been [defendant's,]" and the fact he refused to post Harris' bail with respect to a prior, unrelated charge.  He also stated he never met Everett.  During summations, defendant's counsel stated defendant truthfully testified that the date May 17, 2013, did not "mean anything to [him] . . . because he was[ not] there."

Defendant was convicted and sentenced, and later filed a timely pro se PCR petition supplemented by a certification and brief submitted by appointed counsel.  Defendant asserted he received ineffective assistance of counsel under the two-part test enunciated in Strickland v. Washington, 466 U.S. 668, 687 (1984),[2] due to his trial counsel's failure to:  (1) call three alleged alibi witnesses;

_____

[2]  To establish ineffective assistance of counsel under Strickland, a convicted defendant must satisfy the two-part test by demonstrating that:  (1) counsel's

(2) file and argue a <u>Wade</u>/<u>Henderson</u>[3] motion challenging the identifications made by Small, Everett, and McCord; (3) effectively argue and appeal a motion to sever; and (4) address with the court an improper and allegedly prejudicial interaction between a juror and a member of the victim's family.[4]

After considering the parties' oral arguments and submissions, Judge Young, who was also the trial judge, ordered an evidentiary hearing limited solely to the issue of whether trial counsel was ineffective for failing to call three alleged alibi witnesses and denied defendant's remaining arguments. The judge issued two written opinions explaining the bases for his decisions.

---

performance was deficient, and (2) the deficient performance actually prejudiced the accused's defense. 466 U.S. at 687. The <u>Strickland</u> test has been adopted for application under our State constitution in New Jersey. <u>See</u> <u>State v. Fritz</u>, 105 N.J. 42, 58 (1987).

[3] <u>United States v. Wade</u>, 388 U.S. 218 (1967); <u>State v. Henderson</u>, 208 N.J. 208 (2011).

[4] Before us, defendant does not reprise his ineffective assistance of counsel claim with respect to the alleged improper interaction between a juror and member of the victim's family and we accordingly deem that unbriefed argument waived and do not address it. <u>See</u> <u>Telebright Corp. v. Dir., N.J. Div. of Tax'n</u>, 424 N.J. Super. 384, 393 (App. Div. 2012) (deeming a contention waived when the party failed to include any arguments supporting the contention in its brief); Pressler & Verniero, <u>Current N.J. Court Rules</u>, cmt. 5 on <u>R.</u> 2:6-2 (2024) ("[A]n issue not briefed is deemed waived.").

With respect to Small's identification, defendant argued there were several detectives "working on the case that were in the room, and it is completely unclear what statements were made in providing instructions to him about the identification." The judge rejected defendant's argument and noted neither the trial nor PCR record supported defendant's bald allegation and, on this point, noted Small never stated there were several detectives in the interview room with him, and defendant failed to provide any competent proofs rebutting Small's testimony on that point.

For similar reasons, the judge also rejected defendant's argument that McCord identified defendant only because she was given a plea deal on an unrelated drug charge. He found this argument amounted to unsupported, bald allegations as defendant provided no evidence to support the claim.

The judge found unpersuasive defendant's contentions his trial counsel's performance was constitutionally ineffective for failing to move to suppress Everett's identification because: Everett provided conflicting stories about the event; named individuals other than defendant as the potential shooter; and only after speaking to one of the officers, who showed her photographs of defendant, did she identify defendant as "Slim." In rejecting defendant's arguments, the judge characterized Everett's identification as a permissible "confirmatory

identification" consistent with State v. Pressley, 232 N.J. 587, 592-93 (2018). The judge also rejected defendant's contention an evidentiary hearing was necessary to address his trial or appellate counsels' alleged deficient performance related to his application to dismiss the indictment or sever, finding nothing deficient in counsels' application or advocacy.

As noted, the judge conducted an evidentiary hearing with respect to defendant's claim his counsel failed to call three alibi witnesses. Those three witnesses: June Gunter, defendant's mother, and Khaliyha and Kimberly Gunter,[5] his sisters, testified at the hearing, as did a defense investigator and defendant's two trial counsel. The record from the evidentiary hearing also included three reports from 2015 in which a non-testifying defense investigator memorialized his interview with each witness who claimed to be with defendant on the "date in question."

In its written opinion denying defendant's alibi-based claims, the judge specifically found June, Khaliyha, and Kimberly not credible. He noted each of the alibi witnesses gave testimony contrary to other evidence in the record, specifically, that they did not recall speaking with an investigator prior to

---

[5] As the three witnesses share a common surname, we refer to them individually by their first names, intending no disrespect

defendant's trial despite each being named in the 2015 investigative reports. Additionally, while June and Khaliyha testified they never spoke with defendant's attorney, the judge observed the "testimony appear[ed] to conflict with that of [defendant's trial counsel], who described (1) an incident similar to a phone conversation discussed by Khaliyha, and (2) several phone calls with June during the course of [defendant's] trial."

Conversely, the judge found defendant's trial counsel testified credibly. In making that finding, the judge accepted counsel's testimony in which he explained the strategic reasons why he decided not to call the three witnesses. That testimony included counsel's statement that he believed he "reached out to both [defendant's] sisters, as well as [his] . . . mother" and knew he "spoke with one of his sisters" on the phone, who told him essentially the "story" detailed in the 2015 certifications but during the call, she referenced "a completely different date" for the shootings. Defense counsel further testified, "it wasn't as if it was off by a day or a week, it was a [different] month . . . ." When defendant's counsel corrected her, one of the sisters stated, "something along the lines of, well I don't know anything about that day . . . ."

In addition, counsel testified he recalled speaking to defendant who admitted he was at the scene of the crime and specifically stated Harris, not he,

10 <span>A-0965-22</span>

killed the twelve-year old boy.  According to counsel, defendant knew this to be true because he "went there to kill [Harris] and [he] was shooting at [Harris], not the boy . . . ."  As a result of defendant's statement, counsel stated he did not consider the alibis "valid[,]" and would not call his family members as to do so "would be putting somebody up [there] to perjure themselves . . . ."

This appeal followed in which defendant raises the following points:

POINT ONE

[Defendant] Is Entitled To Relief On His Claim That Trial Counsel Was Ineffective For Failing To Present Alibi Witnesses. . . .

POINT TWO

[Defendant] Is Entitled To An Evidentiary Hearing On His Claims That Trial Counsel Was Ineffective For Failing to Move To Suppress Identifications And Failing To Argue Adequately A Severance Motion, And That Appellate Counsel Was Also Ineffective For Failing to Appeal The Denial Of The Severance Motion. . . .

II.

In his first point, defendant largely reprises his arguments made before Judge Young.  In this regard, he maintains the judge's factual finding that his trial counsel made a reasonable, strategic decision to forego an alibi defense because the witnesses' stories were inconsistent and because defendant told him

11

A-0965-22

he was present at the scene is contrary to the record. Instead, defendant contends each witness testified consistent with the 2015 investigative reports and counsel's decision to end his investigation after a brief phone call with one of the witnesses who provided an incorrect date of incident was unreasonable.

He also argues his trial counsel's testimony that he did not pursue an alibi defense because to do so would have been to suborn perjury, is also unsupported by the credible testimony elicited at the evidentiary hearing, and inconsistent with other proofs and testimony elicited at that hearing and counsel's statements during closing arguments in which he stated defendant was not at the scene of the shootings. He maintains the credible proofs established all three witnesses would have supported his defense that he was not at the scene thereby meeting Strickland's performance and prejudice prongs.

In his second point, defendant again argues the court erred in denying his request for an evidentiary hearing as he established a prima facie case under Strickland that his trial counsel was ineffective for failing to move to suppress Everett's, Small's, and McCord's identifications because they "showed some evidence of suggestiveness," and by failing to adequately argue the charges stemming from the two separate incidents should have been severed.

Specifically, as to Small, defendant argues a hearing was required because Small initially told police he would not be able to identify the shooter as it was dark the night of the shootings and he saw only the profile of a dark skinned, bald, Black man who was not wearing glasses and did not have facial hair; characteristics uncommon to defendant. Defendant further argues the trial evidence established when the police showed Small photos weeks later, he had to "think about it" but eventually selected defendant's photograph. He speculates that it is "possible that a detective who had been working on the case was with Small just before he chose [defendant's] photograph[,]" and argues "several system variables were present." Finally, he claims "the detectives provided feedback, and failed to record Small's confidence level in making the identification."

With respect to McCord's identification, defendant stresses she failed to make an identification of the shooter on the day of the incident and only did so, weeks later, purportedly after she was "offered a probationary term of drug court for her own criminal case . . . ." He further argues her identification was suggestive, speculating she "may have been shown other photos that were not part of the proper array[,]" and it may have not been conducted "pursuant to a blind administration because a detective who was working on the case may have

13

been with McCord just before the identification . . . ." He also contends if granted a hearing, he would have been able to establish the presence of numerous estimator variables.

Defendant also argues Everett's identification was infirm due to the "presence of suggestiveness" because she provided conflicting stories about the incident and initially provided the police with names that did not include defendant. He maintains it was only after she spoke with Harris that she identified that "Slim" was involved. He contends a hearing to establish the presence of estimator variables as well as to explore further her relationship with Harris and her plea deal with the State would have resulted in the preclusion of her identification.

Defendant also claims his appellate counsel was ineffective for failing to challenge the court's severance decision on direct appeal as the two "robberies were distinct and separate from each other, [and] evidence from one was not relevant to the other . . . ." He notes a ballistics report showed different weapons were used and the only evidence linking the two incidents was Everett's testimony.

Having considered defendant's contentions in light of the record and the applicable law, we discern no legal or factual error in the judge's consideration

14

of the issues raised in Point I, or in his decision to deny the petition as to the issues raised in Point II without an evidentiary hearing and affirm substantially for the reasons expressed in the judge's two comprehensive written opinions denying defendant's petition, as well as for the reasons expressed in the judge's equally detailed and thorough written decision denying defendant's severance application. We add the following comments.

"[W]e review under the abuse of discretion standard the PCR court's determination to proceed without an evidentiary hearing." State v. Brewster, 429 N.J. Super. 387, 401 (App. Div. 2013) (citing State v. Marshall, 148 N.J. 89, 157-58 (1997)). "If the court perceives that holding an evidentiary hearing will not aid the court's analysis of whether the defendant is entitled to post-conviction relief, . . . then an evidentiary hearing need not be granted." Ibid. (omission in original) (quoting Marshall, 148 N.J. at 158).

"[W]here no evidentiary hearing has been held, we 'may exercise de novo review over the factual inferences drawn from the documentary record by the [PCR judge].'" State v. Reevey, 417 N.J. Super. 134, 146-47 (App. Div. 2010) (alteration in original) (quoting State v. Harris, 181 N.J. 391, 421 (2004)). We also review de novo the legal conclusions of the PCR judge. Harris, 181 N.J. at 415-16. However, our review of a PCR claim after a court has held an

evidentiary hearing "is necessarily deferential to [the] PCR court's factual findings based on its review of live witness testimony." State v. Nash, 212 N.J. 518, 540 (2013).

Simply raising a PCR claim does not entitle a defendant to an evidentiary hearing as a defendant "must do more than make bald assertions that [they were] denied the effective assistance of counsel." State v. Cummings, 321 N.J. Super. 154, 170 (App. Div. 1999). Rather, trial courts should grant evidentiary hearings and decide on the merits only if the defendant has presented a prima facie claim of ineffective assistance, material issues of disputed facts lie outside the record, and resolution of the issues necessitates a hearing. R. 3:22-10(b); State v. Porter, 216 N.J. 343, 355 (2013).

When petitioning for PCR, the defendant must establish, by a preponderance of the credible evidence, that they are entitled to the requested relief. Nash, 212 N.J. at 541; State v. Preciose, 129 N.J. 451, 459 (1992). As noted, to establish a prima facie claim of ineffective assistance of counsel, the defendant is obligated to show not only the particular manner in which counsel's performance was deficient, but also that the deficiency prejudiced their right to a fair trial. Strickland, 466 U.S. at 687; Fritz, 105 N.J. at 58.

Under the first prong of this test, the defendant must demonstrate that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. There is a strong presumption that counsel "rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Id. at 690. As such, "[j]udicial scrutiny of counsel's performance must be highly deferential[,]" and "every effort [must] be made to eliminate the distorting effects of hindsight." Id. at 689.

Under the "'second, and far more difficult prong,'" of the Strickland test, State v. Gideon, 244 N.J. 538, 550 (2021) (quoting Preciose, 129 N.J. at 463), a defendant "must show that the deficient performance prejudiced the defense." State v. O'Neil, 219 N.J. 598, 611 (2014) (quoting Strickland, 466 U.S. at 687). To establish prejudice, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Gideon, 244 N.J. at 550-51 (alteration in original) (quoting Strickland, 466 U.S. at 694). This test extends to appellate counsel as well. State v. Loftin, 191 N.J. 172, 197-98 (2007).

III.

A.  Failure to Call Alibi Witnesses

Our Supreme Court has recognized that the "[f]ailure to investigate an alibi defense is a serious deficiency that can result in the reversal of a conviction." Porter, 216 N.J. at 353; see also State v. Pierre, 223 N.J. 560, 582-88 (2015).  Indeed, "few defenses have greater potential for creating a reasonable doubt as to [a] defendant's guilt in the minds of the jury [than an alibi]." State v. Mitchell, 149 N.J. Super. 259, 262 (App. Div. 1977).

When a defendant claims his attorney inadequately investigated an alibi defense, "[the defendant] must assert the facts that an investigation would have revealed, supported by affidavits or certifications based upon the personal knowledge of the affiant or the person making the certification." Cummings, 321 N.J. Super. at 170 (citing R. 1:6-6).  If properly supported, an alibi witness' certification should not be dismissed as not credible without an evidentiary hearing.  See State v. Jones, 219 N.J. 298, 313-16 (2014) (holding that where the State's case turned on questions of credibility, and the alibi witness's account could have bolstered the defendant's version of events, the PCR court erred by not conducting an evidentiary hearing at which the alibi witness and counsel could testify); Porter, 216 N.J. at 356.

18

We are convinced the judge correctly denied defendant's alibi-based PCR claims. The judge properly conducted an evidentiary hearing consistent with Jones, and therefore review on this issue "is necessarily deferential to . . . [his] factual findings based on [his] review of live witness testimony." Nash, 212 N.J. at 540.

The judge found the testimony of the three alibi witnesses not credible as each of the witnesses did not recall speaking with an investigator prior to trial, but reports in the record indicate each witness did speak with an investigator. Further, although Khaliyha and June testified they never spoke with defendant's counsel, defendant's trial counsel credibly testified he talked with Khaliyha while she was at work[6] and called June a "couple of times during the course of trial."

Additionally, the judge found defendant's counsel to be credible in his testimony in which he stated he was aware of the potential alibi witnesses but did not believe them to be valid due to an inconsistency in, at least, one of their stories and because he "firmly believed" calling the witnesses would be to suborn perjury based on statements defendant made to him about the night of

_____

[6] Although Khaliyha could not recall with whom she spoke, she did testify that she talked with someone regarding defendant's case while she was at work.

the shootings. Given our deferential standard of review and the judge's credibility findings with respect to the alibi witnesses and trial counsel, we are not persuaded the judge erred in concluding defendant's counsel acted reasonably in deciding not to call the potential alibi witnesses and, as such, that defendant failed to establish his counsel was ineffective.

We are also unconvinced counsel's sole, unobjected to comment during closing arguments that the date of the shooting did not "mean anything to [defendant] . . . because he was not there[,]" warrants a different result. First, it is well-settled, consistent with the court's instructions, which we assume the jurors heeded, that counsel's comment was not evidence. See Model Jury Charges (Criminal), "Instruction After Jury is Sworn" (rev. Sept. 1, 2022) (explaining attorney's closing arguments are "not evidence but their recollection as to the evidence"). Second, defendant never testified, expressly or implicitly, that he had an alibi for the night of the shootings, nor did he state his three family members were corroborative witnesses on this point. We also observe defendant did not explicitly testify he was not at the scene; rather, he summarily stated he did not shoot any of the victims, and had never seen them, or the car involved in the shootings.

B.    Failure to File Wade/Henderson Motion

The right to a Wade hearing is not absolute, and a hearing is not required in every case involving an out-of-court identification. State v. Ruffin, 371 N.J. Super. 371, 391 (App. Div. 2004). "[T]o obtain a pretrial hearing, a defendant has the initial burden of showing some evidence of suggestiveness that could lead to a mistaken identification." State v. Henderson, 208 N.J. 208, 288 (2011). In order for a defendant to be entitled to a Wade hearing, the defendant must show evidence of a mistaken identification that must be connected to a system variable.[7]  Id. at 288-89. Defendant is not entitled to a Wade hearing if the evidence is based solely on an estimator variable.[8] Ibid. System variables are

---

[7]  In Henderson, the Court identified various system variables for eyewitness identifications such as:  blind administration; pre-identification instructions; lineup construction; feedback; recording confidence; multiple viewings; showup timeline; private actors; and other identifications made.  208 N.J. at 289-91.

[8] The Henderson Court cataloged estimator variables, including:  stress; weapon focus; duration; distance and lighting; witness characteristics; perpetrator characteristics; memory decay; race-bias; opportunity to view the criminal; degree of attention; accuracy of prior descriptions; level of certainty demonstrated at identification before feedback; and time between the crime and confrontation.  208 N.J. at 291-93.

variables within the control of the legal system, and estimator variables are out of the legal system's control.[9] Id. at 261.

Further, under Strickland's performance prong, a defendant claiming ineffective assistance of counsel based on a failure to file a motion must show the motion would have been successful. State v. Roper, 362 N.J. Super. 248, 255 (App. Div. 2003). "The failure to raise unsuccessful legal arguments does not constitute ineffective assistance of counsel." State v. Worlock, 117 N.J. 596, 625 (1990) (citing Strickland, 466 U.S. at 688).

---

[9] In State v. Anthony, 237 N.J. 213 (2019), our Supreme Court held that the failure to electronically record an identification procedure or prepare a contemporaneous verbatim account of the exchange automatically entitled a defendant "to a pretrial hearing on the admissibility of identification evidence . . . ." Id. at 233-34; see also State v. Delgado, 188 N.J. 48, 51 (2009) (requiring "as a condition to the admissibility of out-of-court identifications, that the police record, to the extent feasible, the dialogue between witnesses and police during an identification procedure"); R. 3:11 (codifying Delgado).

Here, both Small's and McCord's identifications were recorded and as discussed, defendant failed to identify any evidence of suggestiveness based on system variables and no such evidence is apparent in the record. Additionally, while the record does not reveal whether Everett's identification was recorded, given her familiarity with defendant, we conclude her identification was permissible as a confirmatory identification. Pressley, 232 N.J. at 592-93 (explaining confirmatory identifications are not considered suggestive and "occur[] when a witness identifies someone he or she knows from before but cannot identify by name").

A-0965-22

The judge did not err in rejecting defendant's arguments on this issue, and we are unpersuaded by defendant's arguments before us. As noted, the record establishes both Small's and McCord's identifications were recorded and as the judge found, there was no indication, other than defendant's speculation and bald assertions regarding the existence of system variables, that the identifications were in any way suggestive or that the witnesses were uncertain in their identifications.

Defendant provided no evidence to support his claim Small's identification was not blindly administered but rather was based on defendant's unsupported speculation that it was "possible that a detective who had been working on the case was with Small just before he chose [defendant's] photograph." Similarly, as to McCord's identification, defendant again makes only a bald assertion with respect to McCord's unrelated "probationary term of drug court for her own criminal case" and possible lack of blind administration. McCord testified, however, she did not receive a promise or deal from the prosecutor's office in exchange for her testimony and defendant offers no evidence that the identification process was not blindly administered.

Everett's identification of defendant also was not in any way infirm and counsel accordingly was not constitutionally deficient by failing to file a

23

meritless motion to challenge it. Everett's identification of defendant by his street name was confirmatory and counsel's failure to request a <u>Wade</u>/<u>Henderson</u> hearing was not constitutionally deficient under Strickland's performance prong.

C. <u>Deficiencies Related to Motion to Sever and Failure to Appeal the Court's Severance Decision</u>

<u>Rule</u> 3:7-6 provides that:

> [t]wo or more offenses may be charged in the same indictment or accusation in a separate count for each offense if the offenses charged are of the same or similar character or are based on the same act or transaction or on [two] or more acts or transactions connected together . . . .

However, the court may "order an election or separate trials of counts, grant a severance of defendants, or direct other appropriate relief" where "it appears that a defendant . . . is prejudiced by a permissible or mandatory joinder of offenses . . . in an indictment . . . ." <u>R.</u> 3:15-2(b).

A mere claim of prejudice is insufficient to support a motion to sever. <u>State v. Moore</u>, 113 N.J. 239, 274 (1988). A defendant is not entitled to severance simply because they believe a separate trial "would offer . . . a better chance of acquittal." <u>State v. Johnson</u>, 274 N.J. Super. 137, 151 (App. Div. 1994) (quoting <u>State v. Morales</u>, 138 N.J. Super. 225, 231 (App. Div. 1975)).

"Central to the inquiry is 'whether, assuming the charges were tried separately, evidence of the offenses sought to be severed would be admissible under [N.J.R.E. 404(b)] in the trial of the remaining charges.'" State v. Chenique-Puey, 145 N.J. 334, 341 (1996) (alteration in original) (quoting State v. Pitts, 116 N.J. 580, 601-02 (1989)). Where the evidence would be admissible in separate trials, joinder is permissible "because 'a defendant will not suffer any more prejudice in a joint trial than [they] would in separate trials.'" Ibid. (quoting State v. Coruzzi, 189 N.J. Super. 273, 299 (App. Div. 1983)).

As defendant has challenged his appellate counsel's performance, we note the Strickland standard applies to claims of ineffective assistance of appellate counsel. State v. Gaither, 396 N.J. Super. 508, 513 (App. Div. 2007). However, "a defendant does not have a constitutional right to have appellate counsel raise every non-frivolous issue that defendant requests on appeal." Id. at 515 (citing Jones v. Barnes, 463 U.S. 745, 753-54 (1983)). Instead, counsel may "winnow[] out weaker arguments on appeal and focus[] on one central issue if possible, or at most on a few key issues." Jones, 463 U.S. at 751-52. "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." Smith v. Robbins, 528 U.S. 259, 288 (2000) (quoting Gray v. Greer, 800 F.2d 644, 646 (7th Cir. 1986)).

Here, counsel filed a severance application, and his written submission and oral arguments were in no way deficient. At oral arguments, counsel corrected a factual error in his brief, about which the judge was fully aware. In any event, the judge's written decision detailed all the relevant arguments, discussed all applicable legal principles, and properly exercised its discretion in denying the application to sever the charges. Appellate counsel was not deficient for failing to raise a legal challenge to the court's properly supported discretionary decision. Stated differently, we are satisfied appellate counsel was not ineffective for failing to raise the issue on appeal as it had no chance to succeed. See Gaither, 396 N.J. Super. at 515.

Affirmed.

I hereby certify that the foregoing
is a true copy of the original on
file in my office.

CLERK OF THE APPELLATE DIVISION

A-0965-22